WESTERN CASUALTY & SURETY COM-
PANY, a corporation, et al.,
Plaintiffs in Error,

v.

TULSA EQUIPMENT COMPANY, Inc., a
Corporation, Defendant in Error.

No. 38103.

Supreme Court of Oklahoma.

July 14, 1959.

Rehearing Denied Sept. 29, 1959.

Looney, Watts, Looney & Nichols, by Clyde J. Watts, Oklahoma City, for plaintiffs in error.

A. K. Little, L. D. Hoyt, Oklahoma City, for defendant in error.

WILLIAMS, Vice Chief Justice.

In March, 1952, defendant G. I. Construction Company, hereinafter referred to as defendant, secured several contracts for construction of portions of the Turner Turnpike. One of these contracts, designated as Contract 50, was for an overpass. The Western Casualty and Surety Company, hereinafter referred to as Surety, executed performance bonds on said contracts in April, 1952. As a condition precedent to and as part of the consideration for making such bonds, defendant executed an indemnity agreement whereby defendant assigned, transferred and set over to Surety "as collateral, to secure the obligation herein and any other indebtedness and liabilities" of defendant to Surety, "whether heretofore or hereafter incurred, such assignment to become effective as of the date of said contract bond but only in event of (1) any abandonment, forfeiture or breach of said contract or of any breach of said bond, * * * or of any other bond or bonds executed or procured" by surety "* * * or (3) of a default in discharging such other indebtedness or liabilities when due; * * * or (6) * * * (d) Any and all percentages retained on account of said contract, and any and all sums that may be due under said contract at the

time of such abandonment, forfeiture or breach, or that thereafter may become due * * *."

Defendant, in February, 1953, executed the note sued upon for $7,511 to plaintiff in payment of a past-due balance on an open account. To secure said note defendant made an assignment of funds due under said Contract No. 50, which was then approximately $13,000.

Defendant's construction work under said Contract No. 50 was completed by April 4, 1953, except for corrective and cleanup requirements. At the time of such completion, defendant owed bills for materials and supplies considerably in excess of the balance due defendant on the contract.

Surety filed the indemnity agreement and assignment for record in Lincoln County, the county in which this work under Contract No. 50 was performed, on April 25, 1953 (pursuant to 15 O.S.1951 §§ 631 to 637).

Plaintiff's petition in the action was filed June 27, 1953. At no time did plaintiff file its assignment for record.

Plaintiff for cause of action against defendant and the Turnpike Authority alleged the execution of the note and assignment, and that certain monies were due defendant from the Turnpike Authority on said contract.

The Turnpike Authority filed an answer admitting that it owed defendant $10,519.53; and that it had been restrained in The Federal Court, in an action filed by Surety, from disbursing such monies.

Surety filed a Petition in Intervention in this action, alleging the execution and filing of its indemnity agreement and assignment; and that it had paid bills (itemized) of a total of $26,865.22 (which contained an error in that such total should have been $17,868.99) and by virtue of such payment Surety was subrogated to the liens (materialmen's) and priorities of such creditors.

Plaintiff dismissed with prejudice this suit as to the Turnpike Authority. The Turnpike Authority paid said funds to certain trustees, appointed by Surety and defendant for the liquidation of claims of creditors on all of defendant's contracts.

The trial court awarded plaintiff judgment against defendant in the sum of $7,511, and against Surety in the sum of $6,872.12. In arriving at such judgment, trial court found that Surety had no notice of plaintiff's assignment; and that Surety was subrogated to liens and priorities of creditors (materialmen) of such claims as were listed in Surety's Petition in Intervention and were paid by Surety prior to expiration of six months after completion of the said Contract No. 50. Surety was given priority for claims in the sum of $3,647.41 out of said fund of $10,519.53. Balance of said fund, $6,872.12, was awarded to plaintiff.

Surety sets out eight assignments of error in trial court's judgment. Its fourth assignment of error was that the trial court erred in limiting the effect of defendant's assignment of this fund to the indebtedness incurred by Surety on Contract No. 50.

We agree with this contention. Defendant's assignment to Surety was "to secure the obligations herein and any other indebtedness and liabilities of the undersigned to the company" (Surety).

This assignment was specially pleaded in Surety's Petition in Intervention, and its answer to plaintiff's amended petition.

Testimony at the trial, which was not contradicted by plaintiff, was that the final loss on all of defendant's contracts which were bonded by Surety was approximately $168,000.

Such funds were assignable to Surety under provision of 15 O.S.1951 § 631. Title 15 O.S.1951 § 636 provides as follows:

"(1). A written assignment for value signed by the assignor becomes protected at the time the assignee (a) files a Notice of Assignment after taking an assignment, or (b) takes an assignment during the effective period of the notice.

"(2). A protected assignee takes subject to: (a) judicial liens on the ac-

count at the time his assignment became protected; (b) an assignment to another person which was protected before his assignment, except that an assignee takes priority over another assignee who files later than he did, regardless of the relative dates of their assignments. Notwithstanding the provisions of sub-section (b), a protected assignee takes subject to an assignment, prior in time to his, of which he had written notice at the time he took his assignment, and any written contract made by him as to priorities.

"(3). Subject to (2) above, regardless of notice to the account debtor, a protected assignee has rights to the account and to the proceeds thereof in any form superior to the rights of the assignor and his creditors and assignees from him and may recover the proceeds from any such person in possession of them."

Plaintiff contends when the six months' limitation period, 61 O.S.1951 §§ 1 and 2, expired, this assignment had spent its force, citing Weber Implement & Automobile Co. v. Dubach, 132 Kan. 309, 295 P. 979.

Upon examination of Weber Implement & Automobile Co. v. Dubach, supra, that case does not appear to support such contention although a statement to such effect was made in that opinion. In that case, which is based on a fact situation similar to that in the present case, the surety did not allege or show that the assignment, similar to the assignment in the present case, ever became effective to cover, if by its terms it would have, other liabilities or indebtedness of the contractor owing to the Surety. Further, the only payments made by the Surety were made after the six months' limitation. That the Surety, by its conduct, became liable for unpaid accounts notwithstanding the six months' limitation was not pleaded in the petition of intervention. The Kansas Court held that the Surety had made such payments after the Surety was entirely free of that transaction by virtue of the six months' limita-

tion, and had, therefore, the same status as a general creditor.

In the present case, Surety specifically pleaded the assignment in question. Its proof at the trial showed that amount of the other liabilities and obligations owing to Surety by defendant exceeded the funds so assigned.

Surety's assignment of these funds, being prior in time, and prior in recording, the latter controlling, should have been given priority by the trial court.

In view of the foregoing, comment on other assignments of error is unnecessary.

Reversed and remanded with directions to enter judgment for intervenor, Western Casualty & Surety Company.

HALLEY, JOHNSON, BLACKBIRD, JACKSON, IRWIN and BERRY, JJ., concur.